A04A0981. CHAPARRAL BOATS, INC. et al. v. HEATH.

(606 SE2d 567)

ANDREWS, Presiding Judge.

Chaparral Boats, Inc. and its workers' compensation insurer, Legion Insurance Company, appeal from the order of the Berrien County Superior Court reversing the appellate division of the State Board of Workers' Compensation and finding that Dale Heath was entitled to workers' compensation benefits as a result of knee injuries she incurred while working for Chaparral. The superior court found that Heath incurred two compensable injuries to her left knee, the first occurring on January 19, 2001, and the second occurring after Heath returned to work and aggravated the prior injury and was forced to cease work and undergo knee surgery. Chaparral and Legion contend the superior court erred in both of these rulings. For the following reasons, we find: (1) that the injury to Heath's knee on January 19, 2001, was not compensable because it did not arise out of her employment, and (2) that, even though the initial injury was not compensable, Heath aggravated the injury when she returned to work and incurred a compensable new injury when she was forced to cease work on March 5, 2001, to undergo surgery.

1. First, we address the issue of whether Heath's January 19, 2001 injury arose out of her employment. The administrative law judge (ALJ) found that on January 19, 2001, Heath hyperextended her left knee while she was walking across the Chaparral premises to clock in for work. The evidence showed that Heath was walking at a quicker than normal pace at the time because she was almost late for work when she suddenly felt popping and pain in her left knee, stopped briefly, and then resumed walking with a limp. There was no evidence that Heath slipped, tripped or fell at the time of the injury, nor was there any evidence that she came into contact with any object. Medical evidence showed that the hyperextension, which caused cartilage tears in Heath's knee, could have occurred whether Heath was walking at a normal or quick pace, and the ALJ found that Heath did not contend her quickened pace caused the injury. After considering the evidence presented, the ALJ found that Heath did not show by a preponderance of the evidence that the January 19, 2001 injury to her knee arose out of employment because she failed to produce evidence of a causal connection between her employment and the injury.

The appellate division affirmed the ALJ's decision finding that a preponderance of the competent and credible evidence showed that the January 19, 2001 injury did not arise out of Heath's employment because there was no causal connection between her employment and the injury. The superior court reversed the appellate division and found that Heath's injury arose out of her employment and was

therefore compensable. The court ruled that the evidence could only support the conclusion that the injury arose out of the employment, and that the appellate division erred by finding that the injury did not arise out of Heath's employment because it failed to properly apply the principles set forth in *Johnson v. Publix Supermarkets*, 256 Ga. App. 540, 541 (568 SE2d 827) (2002) (physical precedent only),[1] that "[p]hysical contact with some object" is not necessary in order for the employee to sustain a compensable injury arising out of employment, and that "to be compensable, injuries do not have to arise from something peculiar to the employment." Because neither of these holdings in *Johnson* compels the conclusion that Heath's January 19, 2001 injury arose from her employment, we reverse the superior court. Moreover, as explained herein, to the extent *Johnson* erroneously construed the principles underlying these holdings, the physical precedent established in *Johnson* is disapproved.

For an accidental injury to be compensable under the Workers' Compensation Act, the injury must not only occur in the course of the employment, but also must arise out of the employment. OCGA § 34-9-1 (4). Chaparral does not dispute the finding that the January 19, 2001 injury arose in the course of Heath's employment because it occurred on Chaparral property while Heath was within a reasonable period of ingress from her car to the workplace. *Harrison v. Winn Dixie Stores*, 247 Ga. App. 6, 7-8 (542 SE2d 142) (2000). Rather, the disputed issue is whether Heath carried the burden of showing by a preponderance of the evidence that her accidental injury arose out of her employment. *Dasher v. City of Valdosta*, 217 Ga. App. 351, 352 (457 SE2d 259) (1995); OCGA § 34-9-1 (4).

> [For an accidental injury to arise out of the employment] there must be some causal connection between the conditions under which the employee worked and the injury which he received. The causative danger must be incidental to the character of the employment, and not independent of the relation of master and servant. The accident must be one resulting from a risk reasonably incident to the employment. And a risk is incident to the employment when it belongs to, or is connected with, what a workman has to do in fulfilling his contract of service.

*Thornton v. Hartford Accident &c. Co.*, 198 Ga. 786, 792-793 (32 SE2d

---

[1] *Johnson* was a twelve-judge opinion in which six judges fully concurred, three judges concurred in the judgment only, and three judges dissented. Because less than a majority of the judges fully concurred, the opinion was not binding precedent but physical precedent only. Court of Appeals Rule 33 (a).

816) (1945). "An injury arises 'out of' the employment when a reasonable person, after considering the circumstances of the employment, would perceive a causal connection between the conditions under which the employee must work and the resulting injury." *Hennly v. Richardson*, 264 Ga. 355, 356 (444 SE2d 317) (1994).

In reversing the appellate division and holding that Heath's January 19, 2001 injury arose out of her employment, the superior court relied in part on the statement in *Johnson* that "to be compensable, injuries do not have to arise from something peculiar to the employment." (Punctuation omitted.) *Johnson*, 256 Ga. App. at 541. *Johnson* took this statement from the decision in *Nat. Fire Ins. Co. v. Edwards*, 152 Ga. App. 566, 567 (263 SE2d 455) (1979), which discussed the "positional risk doctrine," a corollary of the general principles defining what constitutes an accidental injury arising out of the employment. *Edwards* held that, under the positional risk doctrine, an accidental injury arises out of the employment when the employee proves that "his work brought him within range of the danger by requiring his presence in the locale when the peril struck, even though any other person present would have also been injured irrespective of his employment." *Edwards*, 152 Ga. App. at 567. *Edwards* also overruled any cases holding contrary to the positional risk doctrine "that the danger must be peculiar to the work and not common to the neighborhood for injuries to arise out of . . . the employment." *Edwards*, 152 Ga. App. at 568.

Prior to *Edwards*, an increased risk theory similar to the positional risk doctrine was applied by the Supreme Court of Georgia in *Thornton*, 198 Ga. 786, citing principles first set out by this Court in *New Amsterdam Cas. Co. v. Sumrell*, 30 Ga. App. 682, 690 (118 SE 786) (1923). Both *Thornton* and *New Amsterdam* addressed the general rule that, for an accidental injury to arise out of employment, it must be caused by a risk "peculiar" to the employment in the sense that the risk was not equally shared by or common to the public at large. Under the general rule, an injury which has some rational causal connection to a condition of the employment arises "out of" the employment, but this definition

> excludes an injury which can not fairly be traced to the employment as a contributing proximate cause, *and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work.* It must be incidental to the character of the business, and not independent of the relation of master and servant.

(Citations and punctuation omitted; emphasis supplied.) *Fried v. United States Fidelity & Guaranty Co.*, 192 Ga. 492, 495 (15 SE2d 704) (1941).

Like *Edwards, Thornton* and *New Amsterdam* make clear that, even where the risk which caused the injury to the employee is common to the public at large — and therefore not peculiar to the employment — the injury arises out of the employment if a duty related to the employment placed the employee in a locale which exposed the employee to the common risk. *Thornton*, 198 Ga. at 792-795; *New Amsterdam*, 30 Ga. App. at 690-691; *Edwards*, 152 Ga. App. at 567-568. For example, in *Edwards* the employee was injured when a windstorm or tornado struck a building in which he was working, which caused parts of a wall to collapse on the employee. Id. at 566. The employer argued that the injury did not arise out of the employment because the causative danger was not peculiar to the employment but was common to the general public in the path of the storm. Id. at 566-567. *Edwards* rejected this argument and held instead that the injury arose out of the employment because the condition of the employment requiring the employee's presence in the place where the storm struck established a causal connection between the employment and the injury. Likewise, *Thornton* applied positional risk type principles to a traveling salesman employee who was injured when he slipped and fell crossing a wet street where the nature of his employment required him to be. *Thornton*, 198 Ga. at 786-793. In finding that the injury arose out of the employment, *Thornton* concluded that, even though the risk of crossing the wet street was one shared by the public at large under the same conditions — so it was not peculiar to the employment — it was nevertheless a risk to which the employee was subjected by the nature of the employment, so the injury incurred while confronting the risk was causally connected to the employment. Id. at 792-794.

This was the understanding of the positional risk doctrine that prompted the holding in *Edwards* overruling cases contrary to the doctrine "which hold that the danger must be peculiar to the work and not common to the neighborhood for injuries to arise out of . . . the employment." *Edwards*, 152 Ga. App. at 568. Thus, the positional risk doctrine, as adopted in *Edwards*, holds that the risk does not have to be peculiar to the employment where a causal connection between the employment and the injury is otherwise established by evidence that a condition of the employment required the employee's presence at a location and a time where the employee confronted the risk. However, the doctrine also remains consistent with the rule that an injury arises out of the employment only when it is "peculiar" to the employment in the sense that there must be a causal connection between a condition of the employment and the injury. *Thornton, New*

*Amsterdam*, and *Edwards* make this clear by stating explicitly that the positional risk doctrine does not apply where the risk which causes the employee's injury "is also common to the general public without regard to such conditions, and [occurs] independently of place, employment, or pursuit." (Citation and punctuation omitted.) *Thornton*, 198 Ga. at 793; *New Amsterdam*, 30 Ga. App. at 690; *Edwards*, 152 Ga. App. at 567. Although "[a]n injury arises out of the employment [under the positional risk doctrine] if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed claimant in the position where he was injured," (emphasis in original) (Larson's Workers' Compensation Law, Vol. 1, § 3.05 (2002)), this does not mean that every injury which occurs while an employee is located somewhere at work necessarily arises out of the employment. Where the injury would have occurred regardless of where the employee was required to be located, and results from a risk to which the employee would have been equally exposed apart from any condition of the employment, there is no basis for finding a causal connection between the employment and the injury, and no basis for compensation under the positional risk doctrine. The general rule still applies that the injury does not arise out of the employment where the causative danger is not "peculiar to the work" in a way that causally connects the employment to the injury. *Fried*, 192 Ga. at 495; *SCI Liquidating Corp. v. Hartford Ins. Co.*, 272 Ga. 293, 294 (526 SE2d 555) (2000) (injuries arise out of the employment "as a proximate result of the peculiar nature of the employment").

We do not suggest that using a "peculiar to the employment" analysis is a good substitute for analyzing compensability in terms of whether there was a causal connection between the employment and the injury. The point is to clarify that some cases holding that, for injuries to arise out of the employment they must be "peculiar to the employment," do so to signify that the employee's injury was caused by a risk to which the employee would have been equally exposed apart from the employment, and therefore the injury was not related to or caused by the peculiar nature of a condition of the employment. *Davis v. Houston Gen. Ins. Co.*, 141 Ga. App. 385, 386-387 (233 SE2d 479) (1977); *Murphy v. ARA Services*, 164 Ga. App. 859, 861-862 (298 SE2d 528) (1982). Where that is the case, there is no causal connection between the employment and the injury, and the injury is not compensable because it did not arise out of the employment. *Fried*, 192 Ga. at 495.

The decision in *Davis* illustrates this point and is controlling in the present case. Mrs. Davis, who was employed as a nurse's aide at a convalescent center, incurred a back injury while putting on her coat as she was about to leave work. *Davis*, 141 Ga. App. at 385-387.

She felt a "pop" in her back when she reached behind to place her arm into the coat sleeve. Id. We affirmed the conclusion reached by the ALJ and the State Board of Workers' Compensation that the risk of incurring such a back injury while putting on a coat "was a hazard to which she was equally exposed apart from her employment." Id. at 387. In other words, the risk was not "peculiar" to the employment, but common to the employee and the public at large. There was no evidence that a condition of the employment required the employee to be in a location that placed the employee within the range of a common risk, so the positional risk doctrine did not apply. Because the causative risk was not peculiar or incidental to the character of the employment, and there was no evidence of a causal connection between a condition of the employment and the injury, *Davis* held that the injury did not arise out of the employment and was not compensable. Id. at 386-387.

Similarly, in the present case the ALJ found upon review of the evidence that Heath's knee injury was not the result of a slip, trip, fall, or contact with any object, and that there was no evidence Heath claimed any particular cause. The evidence showed that, when the knee injury occurred, Heath was simply walking at a pace of her own choosing when she felt popping and pain in her knee and then resumed walking with a limp. Medical evidence further showed that, even though Heath was walking at a faster than normal pace, this did not place her at any greater risk of incurring the knee injury. There was evidence to support the conclusion that Heath's knee injury occurred while she was engaged in an effort (walking), which was a risk to which she was equally exposed apart from her employment. *Davis*, 141 Ga. App. at 386-387; *Fried*, 192 Ga. at 495. There was no evidence implicating the positional risk doctrine. Accordingly, there was factual and legal support for the ALJ's finding that Heath's knee injury did not arise out of her employment because she failed to show by a preponderance of the evidence that there was a causal connection between the injury and her employment. The appellate division affirmed this finding by the ALJ concluding that it was supported by the preponderance of the competent and credible evidence in the record. OCGA § 34-9-103 (a); *Clinical Arts &c. v. Smith*, 218 Ga. App. 681, 682-683 (462 SE2d 757) (1995). The ALJ's finding having been accepted by the appellate division, "[it] cannot be disturbed as long as there is any evidence to support it, because neither the superior court nor the appellate court has the power to find facts." (Citation omitted.) *Hallisey v. Fort Howard Paper Co.*, 268 Ga. 57, 58-59 (484 SE2d 653) (1997).

In any event, the superior court's order reversing the appellate division and finding that Heath's January 19, 2001 injury arose out of her employment was not based on a refusal to accept the factual

findings of the ALJ or the appellate division. Rather, the court concluded that the decision in *Johnson*, 256 Ga. App. 540, applying the positional risk doctrine compelled the conclusion that, on these facts, Heath's injury arose out of her employment. As the above discussion of the positional risk doctrine demonstrates, the decision in *Johnson* misconstrued the positional risk doctrine because it misunderstood the treatment of the doctrine in *Edwards*, 152 Ga. App. 566.

In *Johnson*, the employee, a Publix supermarket cashier, was injured when she fell to the floor and broke her leg as she was "hurrying down a store aisle." *Johnson*, 256 Ga. App. at 540-542. There was evidence that the injury occurred about 30 minutes before the store closed, and that the employee was "walking quickly and looking ahead for items left on the floor, as all Publix employees were encouraged to do," so she could finish this task in time to be available to check out customers when the store closed. Id. The ALJ and the appellate division concluded that the injury arose out of the employment, but the superior court reversed the appellate division finding that the injury did not arise from the employment because, at the time of the injury, the employee was engaged in an activity which posed a risk of injury to which she was equally exposed apart from her employment. Id. at 541. In support of this finding, the superior court in *Johnson* cited the cases of *Borden Foods Co. v. Dorsey*, 112 Ga. App. 838 (146 SE2d 532) (1965) and *Prudential Bank v. Moore*, 219 Ga. App. 847 (467 SE2d 7) (1996).

In *Borden Foods*, evidence showed that, while the employee was walking through the employer's plant to her place of work, she fell to the floor without slipping or tripping on anything or coming into contact with any object, and that she was injured when she hit the floor. Id. at 839-840. An eyewitness said that it appeared as though the employee " 'might have fainted or a muscle give way or something like that and she just kind of went down.' " Id. at 839-840. Because at the time she fell the employee was simply walking, an activity which was a risk to which she was equally exposed apart from her employment, *Borden Foods* found that the fall was not causally connected with and did not arise from the employment. Id. at 839-840. And because she impacted only with the floor, and not with any other work-related object, *Borden Foods* further found that the injury caused by striking the floor as a result of the fall was not causally connected with and did not arise from the employment. Id. at 839-840. *Prudential Bank* presented similar facts showing that the employee, a computer clerk, simply fainted at work and fell and hit her head on the floor baseboard. Id. at 847. Citing *Borden Foods*, the decision in *Prudential Bank* found that the fall resulted from a hazard to which the employee was equally exposed apart from the

employment, and therefore it did not arise from the employment and was not compensable. Id. at 847-848. *Prudential Bank* also explained that, even if a fall is idiopathic and therefore not causally connected with a condition of the employment, an injury which occurs in the process of the fall will be considered work-related and compensable where "the claimant strikes some object specifically related to the work place, such as a work bench, machinery or equipment, because of the 'increased risk' caused by the presence of the work-related object." Id. at 847 (citing *United States Cas. Co. v. Richardson*, 75 Ga. App. 496, 500 (43 SE2d 793) (1947)). *Prudential Bank* found, however, that the employee's impact with the floor baseboard was not compensable because "a baseboard — like a floor — is a structural hazard that the claimant is equally exposed to apart from her employment." Id. at 848.

Both *Borden Foods* and *Prudential Bank* correctly applied the general rule set forth by the Supreme Court of Georgia in *Fried*, 192 Ga. 492, that an injury does not arise out of the employment where it "comes from a hazard to which the workmen would have been equally exposed apart from the employment," and that "[t]he causative danger must be peculiar to the work" in the sense that there must be a causal connection between a condition of the employment and the injury. Id. at 495. As the above discussion of the positional risk doctrine demonstrates, neither *Borden Foods* nor *Prudential Bank* were controlled by the doctrine, so neither case was inconsistent with the decision in *Edwards*, 152 Ga. App. 566, applying the doctrine.

*Johnson* reversed the ruling of the superior court that the injury did not arise out of the employment, and ruled instead that the injury arose out of the employment under the positional risk doctrine. In doing so, *Johnson* overruled *Borden Foods* and *Prudential Bank* as inconsistent with the doctrine as applied in *Edwards*. *Johnson*, 256 Ga. App. at 541-542. By applying the positional risk doctrine to the facts before it, *Johnson* misunderstood the doctrine as set forth in *Edwards*. The doctrine did not apply because there was no evidence in *Johnson* that the employee would not have been injured but for the fact that her job brought her within the range of a common danger by requiring her presence at that location when the peril struck. *Edwards*, 152 Ga. App. at 567. Rather, the issue presented by the facts in *Johnson* was whether, apart from the positional risk doctrine, the injury was causally connected to a condition of the employment. Accordingly, *Johnson* erred by holding that *Borden Foods* and *Prudential Bank* were inconsistent with the positional risk doctrine as set forth in *Edwards*. *Johnson*, 256 Ga. App. at 541-542. The effect of this error was that *Johnson* expanded the positional risk doctrine to eliminate the principle set forth in *Fried*, 192 Ga. at 495, that an injury does not arise out of the employment when the causative

danger "comes from a hazard to which the workmen would have been equally exposed apart from the employment." This Court's decisions in *Borden Foods*, supra; *Prudential Bank*, supra; *Davis*, supra, and others like them, are based on the *Fried* principle, which recognizes that, where an injury arises from a common risk that is independent of (not peculiar to) a condition of the employment, it does not arise out of the employment because there is no causal connection between the employment and the injury. Accordingly, the physical precedent established by the plurality opinion in *Johnson*, supra, is disapproved to the extent it misconstrued the positional risk doctrine and purported to overrule *Borden Foods* and *Prudential Bank*.

The superior court in the present case also reversed the appellate division based on the holding in *Johnson* that *United States Cas. Co.*, 75 Ga. App. 496, stands for the proposition that an injury from an idiopathic fall is compensable even if the employee does not strike any work-related object. *Johnson*, 256 Ga. App. at 542. According to *Johnson*, *Prudential Bank* incorrectly stated that *United States Cas. Co.* stands for the proposition that an idiopathic fall is compensable only when the employee strikes a work-related object. *Johnson*, 256 Ga. App. at 542. A cursory reading of *United States Cas. Co.* shows that *Johnson* and not *Prudential Bank* misconstrued the holding in that case.

In *United States Cas. Co.*, the employee fell as the result of an epileptic attack and, in the process of falling, incurred a fractured skull when he hit his head on a table that was part of his employer's equipment. Id. at 496-499. The issue was whether there was a causal connection between the employment and the injury sufficient to support the conclusion that the injury arose out of the employment. Id. at 497. *United States Cas. Co.* held that, even assuming there was a lack of evidence that a condition of the employment brought about the attack which caused the fall, other evidence showed that the injury was compensable because, when the employee fell he struck a table, which was a hazard of the employment that increased the risk of injury and established the necessary causal connection. Id. at 499. Accordingly, *United States Cas. Co.* further held as follows:

> Where the cause of the fall is personal to the worker (as a non-industrial heart attack, dizzy or epileptic spells, or any idiopathic condition) the fact that the floor is of rough cement instead of wood and hence more dangerous, is no ground for an award. . . . But awards are upheld . . . if the fall is on a stairway or into a machine or against anything except the bare floor, and especially if the fall is from a height, as the risk of injury is increased, or is a special danger of the employment.

(Citation and punctuation omitted.) Id. at 499. The claim in *Johnson* that *United States Cas. Co.* stands for a completely opposite proposition was based on a quote which *Johnson* took out of context from the opinion, and which *United States Cas. Co.* used to illustrate the view that, even though a fall is caused by an idiopathic condition and no work-related object is involved, it is still compensable where the injury due to the fall is from a height or down stairs that increases the risk of injury. Id. at 500. Accordingly, *Johnson,* supra, is also disapproved to the extent it misconstrued and overruled the holdings in *United States Cas. Co.* and *Prudential Bank* on this issue. Since Heath did not fall from a height or strike any work-related object when she incurred the knee injury, there was no basis for concluding that the injury was compensable.

For all of the above reasons, we find the superior court erred by concluding that the evidence as found by the ALJ and the appellate division could only support the conclusion that Heath's January 19, 2001 injury arose out of her employment. To the contrary, we find that the ALJ and the appellate division correctly found that Heath's January 19, 2001 injury did not arise out of her employment and was not compensable. Accordingly, we reverse the portion of the superior court's order holding that Heath's January 19, 2001 injury was compensable.

2. Even though Heath's January 19, 2001 knee injury was not compensable, we nevertheless find that, after she returned to work, she incurred a compensable new accidental injury that arose out of and in the course of her employment.

[W]hen a claimant is injured on the job but continues, without an agreement or award [for compensation], to perform the duties of his employment until forced to cease work because of a gradual worsening of his condition that is at least partly attributable to his physical activity in continuing to work, such facts constitute a new accident.

(Punctuation omitted.) *Cypress Cos. v. Brown,* 246 Ga. App. 804, 807 (542 SE2d 544) (2000). Citing testimony by Heath and Heath's physician, the ALJ found that, after Heath returned to work subsequent to the January 19, 2001 knee injury, her knee gradually worsened due to the performance of her normal job duties until she was forced to cease work on March 5, 2001, and undergo surgery on the knee. The appellate division vacated this finding and found that the evidence showed that Heath's need for surgery was attributable to the January 19, 2001 injury, and that her continued work after January 19, 2001, did not cause or contribute to her need for surgery.

The appellate division did not cite to any evidence upon which it relied to reach this conclusion, and we find that there is no evidence in the record to support the conclusion that Heath's inability to continue work and her need for surgery was not at least partly attributable to a gradual worsening of her condition as a result of the physical activity of her normal job duties. In fact, Heath and her physician testified that she ceased work and underwent the surgical procedure after her knee condition worsened as a result of performing her job duties. The appellate division is authorized to substitute its findings for those of the ALJ only when its alternative findings are supported by some evidence in the record. *Bankhead Enterprises v. Beavers*, 267 Ga. 506, 507-508 (480 SE2d 840) (1997). In the absence of any evidence to support the appellate division's substituted findings, we conclude that the record supports the ALJ's conclusion that Heath incurred a compensable new accidental injury when she was forced to cease work on March 5, 2001, to undergo knee surgery. Accordingly, we affirm the portion of the superior court's order which reversed the appellate division on this issue and found in accordance with the ALJ that Heath incurred a compensable new injury on March 5, 2001.

*Judgment affirmed in part and reversed in part. Smith, C. J., Johnson, P. J., Blackburn, P. J., Ruffin, P. J., Eldridge, Ellington and Adams, JJ., concur. Barnes, Miller and Phipps, JJ., concur specially. Mikell, J., disqualified.*

BARNES, Judge, concurring specially.

While I agree with the result reached by the majority in this case and in Division 2, I do not agree with all that is said. In this case, the superior court misapplied the holding in *Johnson v. Publix Supermarkets*, 256 Ga. App. 540 (568 SE2d 827) (2002), which is physical precedent only, because a majority of judges did not fully concur with all that is said.[2] A Court of Appeals opinion in which less than a majority of the Court concurs fully merely decides the issues in that case and is not binding precedent. *State v. Smith*, 242 Ga. App. 295, 296 (529 SE2d 423) (2000); *Smith v. Morris, Manning & Martin*, 254 Ga. App. 355, 357 (1) (562 SE2d 725) (2002). It may be cited as

---

[2] Judgment as Precedent. A judgment which is fully concurred in by all judges of the Division is a binding precedent; if there is a special concurrence without a statement of agreement with all that is said in the opinion or a concurrence in the judgment only, the opinion is a physical precedent only. If the appeal is decided by a seven or twelve judge Court, a full concurrence by a majority of judges is a binding precedent, but if the judgment is made only by special concurrences without a statement of agreement with all that is said in the opinion or by concurrence in the judgment only, there being general concurrence by less than a majority of the Judges, it is a physical precedent only. Court of Appeals Rule 33 (a).

persuasive authority, just as foreign case law or learned treatises may be persuasive, but it is not binding law for any other case.

Further, nothing in *Johnson* does away with the requirement that a claimant in a workers' compensation case must show that her injury arose out of her employment. The point in *Johnson* is simply that "[p]hysical contact with some object is not necessary in order for the employee to sustain an accident within the meaning of the Workers' Compensation Law," (punctuation omitted) id. at 541, quoting *Orkin Exterminating Co. v. Wright*, 92 Ga. App. 224, 225 (88 SE2d 205) (1955), a point that had become obscured in our case law. One such obscuring opinion was *Prudential Bank v. Moore*, 219 Ga. App. 847 (467 SE2d 7) (1996), in which a three-judge panel held that, because the claimant did not strike an object when she fell, but only hit the baseboard, she was not entitled to workers' compensation benefits, although apparently she would have been covered had she hit her keyboard or a desk or a chair. This is clearly an unreasonable method of analyzing whether a claimant is entitled to benefits, and one which earlier opinions had already disapproved.

The "peculiar risk" and "positional risk" doctrines arose when the courts addressed whether a claimant was covered under workers' compensation for an injury resulting from an act of God. *National Fire Ins. Co. v. Edwards*, 152 Ga. App. 566, 567 (1) (263 SE2d 455) (1979). In *National Fire*, the claimant was injured when a tornado toppled a wall he was standing beside. Under the "peculiar risk" doctrine, he would not have been compensated, because the danger — the tornado — was not peculiar to his work. In the unanimous whole court opinion in *National Fire*, we held that the better analysis was to determine whether the claimant's work "brought him within range of the danger by requiring his presence in the locale when the peril struck, even though any other person present would have also been injured irrespective of his employment." Id. at 567.

This court in *Johnson* merely attempted to clarify this analysis; it did not change the law. The plurality opinion in *Johnson* does not stand for the proposition that one who suffers an idiopathic fall is automatically covered regardless of whether the fall arose out of her employment. Even the dissent in *Johnson* did not disagree with the legal analysis; instead, it disagreed with the application of that analysis to the facts of the case.

Therefore this court should not now disapprove of the physical precedent plurality opinion in *Johnson*, and consequently I concur only in Division 2 and in the result.

I am authorized to state that Judge Miller and Judge Phipps join in this special concurrence.

DECIDED AUGUST 3, 2004 —
RECONSIDERATION DENIED AUGUST 31, 2004 — 

*Clyatt, Clyatt & Golden, Melissa M. Clyatt, Richard L. Perryman III*, for appellants.
*Berrien L. Sutton, Bryant H. Bower, Jr.*, for appellee.