**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J, and BOGGS, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 10, 2016**

# In the Court of Appeals of Georgia

A15A2139. STURGESS v. OA LOGISTICS SERVICES, INC. et al.    DO-105

DOYLE, Chief Judge.

Maria Sturgess appeals from the grant of summary judgment to OA Logistics Services, Inc. ("OA"), and StaffChex, Inc., in her wrongful death claim against them based on the death of her son, Nickifor Zephyrine. Sturgess contends that the trial court erred by ruling that (1) her claim was barred by the exclusive remedies provision of the Georgia Workers' Compensation Act ("WCA"), and (2) StaffChex is a temporary staffing firm covered by the WCA.[1] Because the undisputed facts show that Zephyrine's death arose out of his employment under the positional risk doctrine and that StaffChex is covered by the WCA, we affirm the grant of summary judgment.

---

[1] OCGA § 34-9-11.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

So viewed, the record shows that OA contracted with StaffChex to provide temporary workers to work at a warehouse owned and operated by OA. On February 16, 2012, Christopher Lema applied for a position with StaffChex using Christopher Young-Evans as an alias. Certain portions of Lema's application form were incomplete, and his purported photo identification appeared different from his actual appearance. OA required StaffChex to perform criminal background checks on each applicant before they were employed, but before Lema's check was returned, he began working at an OA warehouse. The check on the alias would eventually show no criminal history, despite the fact that Lema had a felony criminal record.

On February 24, 2012, still before the return of the criminal background check, Lema was employed at the OA warehouse along with Zephyrine, who drove a forklift.

---

[2] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

2

Zephyrine's forklift ran out of fuel, so he went to an office area to inquire about refueling. He encountered a female employee who told him that he might find a supervisor if he waited outside the office. As Zephyrine waited outside the office with his back turned, Lema entered the office and forcibly attempted to kiss the female co-worker, who immediately pushed him off. In response, Lema smirked, "stood back[,] . . . and walked out." Lema then produced a hand gun and shot Zephyrine in the back of the head, re-entered the office, and sexually assaulted the female employee. During the ensuing struggle, Lema inexplicably passed out, and the female employee fled, warning the other employees in the warehouse. According to the female employee, Zephyrine, who was a family friend, had not been aware of the assault, had not attempted to intervene, and had not interacted with Lema before that occasion.

Based on Zephyrine's death, Sturgess sued OA, StaffChex, Lema, a John Doe who allegedly supplied Lema the gun, and another corporate entity. Among the allegations were claims that OA and StaffChex negligently conducted the hiring process, resulting in the hiring of a convicted felon who attacked his co-workers, killing Zephyrine.

Following discovery, StaffChex and OA moved for summary judgment, and the trial court granted it in favor of both parties on the ground that the exclusive remedy provisions of the WCA bar Sturgess's tort claims against them. Sturgess now appeals.

1. Sturgess contends that the trial court erred by concluding that Zephyrine's death arose out of and in the course of his employment. We disagree.

Under OCGA § 34-9-11 (a), the WCA is the exclusive remedy for injuries "by accident arising out of and in the course of employment."[3]

> A felonious assault by a third party upon an employee is treated as an accident covered by the Act, so long as the wil[l]ful act is not directed against the employee for reasons personal to the employee.[4] In order to determine if the assault occurred for reasons personal to the employee, we consider whether the injuries of which the employee complains (1) arose out of and (2) in the course of [his] employment. If these two conditions are met, the employee's tort claims are barred by the exclusive remedy provisions of the [WCA]. Accordingly, whether the attack [in this case] occurred for reasons personal to [Zephyrine]

---

[3] OCGA § 34-9-1 (4).

[4] Although not dispositive, we note that there is nothing in the record to suggest that the attack on Zephyrine was motivated by reasons personal to Zephyrine or related to his employment. Instead, it appears that Lema fatally shot Zephyrine simply because Zephyrine was in the wrong place at the wrong time.

4

depends upon whether [his death] arose out of and in the course of [his] employment . . . .[5]

It is beyond dispute that Zephyrine's death arose in the course of his employment because it occurred while he was on duty performing his job functions at his employment location.[6] Accordingly, our analysis focuses on whether Zephyrine's death "arose out of" his employment.

> The words "arising out of" mean that there must be some causal connection between the conditions under which the employee worked and the injury which he received. The causative danger must be incidental to the character of the employment, and not independent of the relation of master and servant. The accident must be one resulting from a risk reasonably incident to the employment. And a risk is incident to the employment when it belongs to, or is connected with, what a workman has to do in fulfilling his contract of service. It arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the

---

[5] (Citations and punctuation omitted.) *Burns Intl. Security Svcs. Corp. v. Johnson*, 284 Ga. App. 289, 290-291 (1) (643 SE2d 800) (2007).

[6] See id. at 292 (1) (b) ("An injury arises in the course of employment when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of [his] duties, and while []he is fulfilling those duties or engaged in doing something incidental thereto. This statutory requirement relates to the time, place and circumstances under which the injury takes place.") (punctuation omitted).

conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment.

Contrarily, the definition excludes an injury which can not fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workmen would have been equally exposed apart from the employment.[7]

Although Sturgess points out the patent lack of connection between the shooting and Zephyrine's employment, StaffChex argues that the killing nevertheless arose out of Zephyrine's employment under the positional risk doctrine. That doctrine holds that

an accidental injury arises out of the employment when the employee proves that his work brought him within range of the danger *by requiring his presence in the locale when the peril struck, even though any other person present would have also been injured irrespective of his employment*.[8]

---

[7] (Footnote and punctuation omitted.) *Dawson v. Wal-Mart Stores, Inc.*, 324 Ga. App. 604, 607 (2) (751 SE2d 426) (2013).

[8] (Punctuation omitted, emphasis supplied.) *Chaparral Boats, Inc. v. Heath*, 269 Ga. App. 339, 341 (1) (606 SE2d 567) (2004) (whole court), quoting *Nat. Fire*

Applying this doctrine to the present facts demonstrates that a causal connection to Zephyrine's workplace does exist despite the seemingly random nature of the attack on Zephyrine. As this Court pointed out in, *Chaparral Boats, Inc. v. Heath*,[9] a whole-court opinion analyzing the positional risk doctrine,

> the positional risk doctrine . . . holds that the risk *does not* have to be peculiar to the employment where a causal connection between the employment and the injury is otherwise established by evidence that a condition of the employment *required the employee's presence at a location and a time where the employee confronted the risk*. However, the doctrine also remains consistent with the rule that an injury arises out of the employment only when it is "peculiar" to the employment in the sense that there must be a causal connection between a condition of the employment and the injury. [Our cases] make this clear by stating explicitly that the positional risk doctrine does not apply where the *risk which causes the employee's injury* is also common to the general public without regard to such conditions, *and occurs independently of place*, employment, or pursuit. Although an injury arises out of the employment under the positional risk doctrine if it would not have occurred *but for the fact that the conditions and obligations of the employment placed claimant in the position where he was injured*, this does not mean that every injury which occurs while an employee is located somewhere at work necessarily arises out of the employment.

*Ins. Co. v. Edwards*, 152 Ga. App. 566, 567 (1) (263 SE2d 455) (1979) (whole court).

[9] 269 Ga. App. at 339.

7

Where the injury would have occurred regardless of where the employee was required to be located, and results from a risk to which the employee would have been equally exposed apart from any condition of the employment, there is no basis for finding a causal connection between the employment and the injury, and no basis for compensation under the positional risk doctrine. The general rule still applies that the injury does not arise out of the employment where the causative danger is not "peculiar to the work" in a way that causally connects the employment to the injury.[10]

For example, when an injury occurs in the workplace but is idiopathic,[11] such as a sudden knee failure that could have happened at any time and place,[12] then the injury is not a work-related injury within the scope of the WCA.[13] But it remains true that

---

[10] (Citations and punctuation omitted; emphasis supplied.) Id. at 342-343 (1).

[11] Idiopathic injuries are "peculiar to the individual" or arise "spontaneously or from an obscure or unknown cause." Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/idiopathic.

[12] See *Chambers v. Monroe County Board of Commissioners*, 328 Ga. App. 403, 403-405 (762 SE2d 133) (2014).

[13] See id., citing *Chaparral Boats, Inc.*, 269 Ga. App. at 339-344, 348 (1) (holding that a nurse did not suffer an injury within the scope of the WCA when she was walking at a pace of her own and "felt a popping and pain in her left knee").

8

even where the risk which caused the injury to the employee is common to the public at large — and therefore not peculiar to the employment — the injury arises out of the employment if a duty related to the employment *placed the employee in a locale which exposed the employee to the common risk.*[14]

Here, it is undisputed that Zephyrine's employment placed him in a locale that unfortunately exposed him to being shot by Lema. "It was only because of his employment that [Zephyrine] was at the [OA warehouse] on the morning of his murder and only because of his employment that he had any contact or relationship with [Lema]."[15] Thus, the risk of being shot by Lema, while not peculiar to Zephyrine's workplace, was nevertheless connected to his workplace by virtue of where it occurred. As stated above, "an injury arises out of the employment under the positional risk doctrine if it would not have occurred but for the fact that the conditions and obligations of the employment placed claimant in the position where

---

[14] (Emphasis supplied.) *Chaparral Boats, Inc.*, 269 Ga. App. at 342 (1).

[15] *Peterson v. Rtm Mid-America*, 209 Ga. App. 691, 693 (2) (434 SE2d 521) (1993) (noting Michigan adoption of positional risk doctrine and applying same for purposes of Michigan WCA statute).

he was injured."[16] Accordingly, under the specific facts of this case, we conclude that the trial court correctly ruled that Zephyrine's injury resulted from an accident arising out of and in the course of his employment for purposes of the WCA.[17]

2. Sturgess also argues that even if the injury was an accident within the scope of the WCA, the WCA's exclusive remedy provision does not apply here because StaffChex is not a traditional employer and does not meet the definition of a

---

[16] (Punctuation and emphasis omitted.) *Chaparral Boats, Inc.*, 269 Ga. App. at 343 (1).

[17] See *Peterson*, 209 Ga. App. at 693 (3). We note that the present facts are distinct from those in *Kennedy v. Pineland State Bank*, 211 Ga. App. 375 (439 SE2d 106) (1993), which did not address the positional risk doctrine. In that case, the Court held that a sexual assault of a female bank employee by a male bank director while the employee was helping him conduct business in the bank vault did not arise out of her employment. This reflects a valid public policy that the exclusive remedy provision of the WCA should not "shield an employer from all tort liability based on incidents of sexual harassment. The clear public policy emanating from federal and [state] law holds that an employer is charged with maintaining a workplace free from sexual harassment. Applying the exclusivity rule of workers' compensation to preclude any and all tort liability effectively would abrogate this policy." *Byrd v. Richardson-Greenshields Securities, Inc.*, 552 So.2d 1099, 1104 (Fla. 1989). See also *Sci Liquidating Corp. v. Hartford Fire Ins. Co.*, 272 Ga. 293, 294 (526 SE2d 555) (2000) ("Sexual harassment claims have been held not to 'arise out of' employment, even though they occur 'in the course of' employment."), citing *Murphy v. ARA Services, Inc.*, 164 Ga. App. 859, 860 (298 SE2d 528) (1982) (holding that the WCA did not bar tort claims based on a pattern of sexual harassment).

10

"temporary help contracting firm," which is deemed to be a statutory employer for purposes of the WCA.[18]

Under OCGA § 34-9-11 (c),

[t]he immunity provided by [the WCA] shall apply and extend to the businesses using the services of a temporary help contracting firm, as such term is defined in Code Section 34-8-46, . . . when the benefits required by this chapter are provided by either the temporary help contracting firm . . . or the business using the services of . . . such firm or company. A temporary help contracting firm . . . shall be deemed to be a statutory employer for the purposes of this chapter.

OCGA § 34-8-46 defines "temporary help contracting firm" as

any person who is in the business of employing individuals and, for compensation from a third party, providing those individuals to perform work for the third party under the general or direct supervision of the third party. Employment with a temporary help contracting firm is characterized by a series of limited-term assignments of an employee to a third party, based on a contract between the temporary help contracting firm and the third party.

Here, Sturgess argues that because Zephyrine had been working as a forklift driver "for a couple of months" at OA and there was no evidence of a planned end to

_____

[18] See OCGA § 34-9-11 (c).

that term, StaffChex cannot be considered a temporary help contracting firm. Nevertheless, it is undisputed that Zephyrine worked at OA under OA's general supervision as part of StaffChex's regular business of contracting with third parties to provide employees on a temporary basis. This arrangement was memorialized in a contract between StaffChex and OA. It is undisputed that OA's employment needs fluctuated, StaffChex provided OA staff as necessary, and Zephyrine was not considered a regular long-term employee at the time he was killed. Absent other facts to the contrary, we decline to hold that Zephyrine's ongoing two-month work stint demonstrates any deviation from the typical temporary staffing arrangement contemplated by OCGA § 34-8-46. Accordingly, this enumeration is without merit.

*Judgment affirmed. Phipps, P. J., and Boggs, J., concur*.