A93A0565. PETERSON et al. v. RTM MID-AMERICA, INC. et al.
A93A0566. ARBY'S, INC. v. PETERSON et al.
(434 SE2d 521)

COOPER, Judge.

Randall Gernaat, a white supervisor at an Arby's franchise in Michigan, robbed the restaurant and murdered Dwayne Peterson, a black co-worker. Peterson's parents, individually and on behalf of his estate, brought this action against Arby's, Inc. as well as RTM, Inc. and RTM Mid-America, Inc., two corporations which allegedly owned and operated the franchise. The parents sued for wrongful death and violation of Michigan's Elliott-Larsen Civil Rights Act, MCL § 37.202 et seq. The parties agreed that the substantive law of Michigan, the site of the murder, applied. In Case No. A93A0565, the parents appeal the trial court's grant of summary judgment for all defendants on all claims. In Case No. A93A0566, which we will need to address only if we reverse in Case No. A93A0565, Arby's, Inc. appeals an earlier order of the trial court denying its separate motion for summary judgment on other grounds. For convenience, we will refer to the parents as appellants and the corporate defendants as appellees throughout this opinion. Also for convenience, we will refer to RTM, Inc. and RTM Mid-America, Inc. collectively as "RTM" except in Division 4.

Viewing the evidence in the light most favorable to appellants as non-movants on a motion for summary judgment, the record shows that Gernaat and Peterson were the only employees working in an Arby's franchise at approximately 4:30 or 5:00 one morning. RTM had recently hired Peterson through a work release program with the local corrections center. Gernaat was an assistant manager of the restaurant and was acting as the shift supervisor. When the power went off, Gernaat pretended to try unsuccessfully to turn it back on. He then herded the few customers in the restaurant out the front door. While doing so, he talked to Officer Joann Woodfield, who was waiting in front of the restaurant for another officer who was to meet her there for breakfast. Gernaat explained to Officer Woodfield that the power was off and said he needed to rush back inside because he did not trust the other employee to be in the restaurant alone. Gernaat then went back inside and murdered Peterson by shooting him with a gun three times and stabbing him thirteen times. He robbed the restaurant, hid the money above the ceiling in the rest room and called the police to report an armed robbery. When the police arrived, Gernaat told them the robbery and murder were committed by two black men and a third man who was either black or Hispanic.

Michael Kovac, a 21-year-old area supervisor with RTM, had hired Gernaat as assistant manager several months earlier. Gernaat was recommended to Kovac by Pat Evans, a restaurant manager with RTM. Kovac hired Gernaat after talking with Evans, interviewing

Gernaat twice and calling one of Gernaat's former employers. Kovac did not call any of the other former employers or any of the personal references listed on Gernaat's employment application. He also did not run a background check on Gernaat although he had authority to do such a check and sometimes did on other managerial employee candidates, including at least two black candidates. If Kovac had called other references or run a background check or both, he could have discovered that Gernaat had a history of emotional and behavioral problems, including numerous thefts, and had a criminal record in Florida. After Gernaat was hired, two incidents of note occurred prior to the murder of Peterson: Gernaat reported that he broke up a fight between three black men by the restaurant's dumpster, knocking one of the men out and breaking the leg of another, but apparently this incident never happened; and Gernaat reported cash shortages on his shift which he blamed on another young black man, Eric Boyles. At least half of the employees in that particular Arby's franchise were black at the time these incidents occurred.

The trial court granted appellees' motion for summary judgment on the grounds that the wrongful death action was barred by the exclusive remedy provision of the Michigan workers' compensation statute (MCL § 418.131) and there was no violation of the civil rights statute as a matter of law.

1. Because its disposition may affect our analysis of other issues, we first address appellants' argument that the trial court erred in refusing to consider affidavits from two police officers in which they opine that Gernaat's murder of Peterson was motivated by personal and racial animus. Opinions are admissible as long as the witness recites the facts on which his opinion is based. OCGA § 24-9-65. Officers Joann Woodfield and Peter Woodfield stated their opinions were based on the following factors: (1) the brutal nature of the murder, in which Gernaat used three weapons to inflict sixteen wounds, (2) Gernaat's statement to both officers that the crime had been committed by three non-white men, (3) Gernaat's statement to Officer Joann Woodfield after the power went off that he needed to get back inside because he did not trust Peterson alone in the dark, (4) Gernaat's earlier report about breaking up a fight among three black men, and (5) Gernaat's earlier report of suspected theft by another young black worker. While an officer may testify as to his opinion of a perpetrator's motives when that opinion is based on statements made by the perpetrator to that officer in the context of an investigation, *O'Kelley v. State*, 175 Ga. App. 503 (3) (333 SE2d 838) (1985), he may not give an opinion based on hearsay reports about what the perpetrator said or did on another occasion, even if those hearsay reports are elicited in the course of his investigation. See *Avant Trucking Co. v. Stallion*, 159 Ga. App. 198 (1) (283 SE2d 7) (1981). Factors (4) and

(5) above are clearly inadmissible hearsay and cannot be considered in determining whether the opinions are sufficiently supported by facts. For purposes of this discussion, we will assume factor (3) is admissible pursuant to the res gestae exception to the hearsay rule. Id. Even so, the affiants' opinions are supported only by the nature of the murder, the fact that Gernaat blamed the crime on three non-whites and the fact that Gernaat said he did not trust Peterson. "The question of whether a witness has established sufficient opportunity for forming a correct opinion or has stated a proper basis for expressing an opinion is for the trial court." *Dept. of Transp. v. McLaughlin*, 163 Ga. App. 1, 5, (3) (292 SE2d 435) (1982). In this case, the trial court determined that the facts on which the officers' opinions could properly be based did not adequately support those opinions, and we cannot conclude that it abused its discretion in doing so.

2. In two enumerations of error, appellants argue that summary judgment was improper with respect to their wrongful death claim because a question of fact remains as to whether their son's death "arose out of" his employment, and thus as to whether the workers' compensation statute covers this situation. Historically, an injury only arose out of employment if the injury was caused by the employment or was attributable to a risk incident to such employment. See *Hopkins v. Michigan Sugar Co.*, 150 NW 325 (Mich. 1915). However, the Michigan Supreme Court adopted positional risk analysis in 1970. *Whetro v. Awkerman*, 174 NW2d 783 (Mich. 1970); see also *Queen v. Gen. Motors Corp.*, 196 NW2d 875 (Mich. App. 1972). Pursuant to positional risk analysis, an injury arises out of employment if the employment caused the employee to be in the position he was in when the injury occurred and brought him into contact with the risk that caused the injury. See *Whetro*, supra. Appellants cite *Devault v. Gen. Motors Corp.*, 386 NW2d 671 (Mich. App. 1986) and *Morris v. Soloway*, 428 NW2d 43 (Mich. App. 1988) for the proposition that positional risk analysis does not apply to assaults by co-workers. However, these cases hold only that positional risk analysis does not apply to assaults by co-workers which are motivated by purely personal reasons unrelated to work. While the appellate courts of Michigan have not addressed the application of positional risk analysis to assaults by co-workers which are not motivated by purely personal reasons, a Wisconsin court has applied the doctrine to provide workers' compensation coverage in such a context. See *Applied Plastics v. Labor &c. Comm.*, 359 NW2d 168 (Wis. App. 1984). We conclude the courts of Michigan would do the same.

It was only because of his employment that Peterson was at the restaurant on the morning of his murder and only because of his employment that he had any contact or relationship with Gernaat. Thus, the trial court correctly ruled that Peterson's death arose out of his

employment unless evidence in the record raises a question regarding whether Gernaat's attack was motivated by personal animosity. Even viewing the evidence in the light most favorable to appellants, the only facts from which personal animosity could arguably be inferred are the victim's multiple wounds, which can most logically be explained as Gernaat's attempt to make it look like the robbery and murder were committed by three perpetrators rather than one, and Gernaat's statement that he did not trust Peterson alone, which can most logically be explained as Gernaat's excuse to leave Officer Woodfield and put his plan into action. It is undisputed that Peterson had just started working at the restaurant, that he and Gernaat hardly knew each other and that they did not know each other at all outside of work. Given this lack of a personal relationship, the trial court properly ruled that no question was established regarding a personal motivation for the murder, and thus that Peterson's death was covered by the workers' compensation statute.

3. Appellants next contend that even if their son's death arose out of his employment, the exclusive remedy provision of the workers' compensation statute does not apply because his death resulted from an intentional tort. "The right to recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer. . . . The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court." MCL § 418.131. Clearly, any alleged negligence on the part of appellees in hiring Gernaat as a supervisor cannot constitute actual knowledge that an injury was substantially certain to occur. See *Eads v. Simon Container Machinery*, 676 FSupp. 786 (E. D. Mich. 1987). Moreover, Gernaat's intent to murder will only be imputed to appellees if Gernaat stood in such a position of ownership and control with respect to appellees that he must realistically be considered their alter ego. See *Beauchamp v. Dow Chemical Co.*, 398 NW2d 882, 888 (Mich. 1986); *Burgess v. Holloway Constr. Co.*, 332 NW2d 584 (Mich. App. 1983). The cases cited by appellants to the contrary are inapposite because they involve actual knowledge rather than intentional assault. With respect to intentional assault, Professor Larson states: "Intentional injury inflicted by the employer in person on his employee may be made the subject of a common-law action for damages. . . . The same result may follow when the employer is a corporation and the assailant is, by virtue of control or ownership, in effect the alter ego of the corporation. But

when the intentional injury is committed by a co-employee, the better rule is than an action in damages will not lie against the employer merely because the co-employee occupied supervisory status in relation to the claimant." 2A Larson, Workmen's Compensation Law, § 68.00, p. 13-1; see also id. at § 68.21 and cases cited therein. Gernaat, a recently hired assistant manager of an Arby's franchise, was not in a position of ownership or control with respect to appellees. Accordingly, the trial court did not err in concluding that Gernaat's intent could not be imputed to appellees and the intentional tort exception to the exclusive remedy bar did not apply.

4. In three enumerations of error, appellants contend that summary judgment should not have been granted for all three appellees because there is a question of fact regarding which of the appellees was Peterson's employer. In support of this contention, appellants cite cases holding that whether a particular defendant is an employer for purposes of the exclusive remedy provision depends on consideration of several factors and that such a determination will generally be one for the jury. See, e.g., *Derigiotis v. J. M. Feighery Co.*, 460 NW2d 235 (Mich. App. 1990). However, each of the cited cases involved allegations of negligence unrelated to hiring or employment (i.e., allegations of acts or omission which would have constituted negligence regardless of whether it was the employer who committed or omitted them). In this case, on the other hand, appellants allege claims based on the negligent hiring of a co-employee. Though it may be unclear which entity employed Peterson, it is clear that the same entity that employed him also employed Gernaat. Thus, this issue presents a catch-22 for appellants: each appellee can be liable for negligent hiring only if it, or an entity acting as its agent, employed the co-employee; and each employee is entitled to rely on the exclusive remedy provision if it or its agent employed Peterson. See *Leonard v. All-Pro Equities*, 386 NW2d 159 (Mich. App. 1986). Accordingly, in the context of a negligent hiring case such as this one, where only the employer or his agent could be liable, the trial court did not err in allowing all three appellees to rely on the exclusive remedy provision.

5. Lastly, appellants argue that the trial court erred in granting summary judgment on their civil rights claims. Specifically, appellants contend that appellees engaged in discriminatory hiring practices which, together with other discriminatory policies and practices, created a racially discriminatory environment which fostered Gernaat's alleged racial animus. They further assert that the murder itself was racially motivated and that Gernaat's motivation may be imputed to appellees. We have read the entire record in this case, including the depositions of Rhodes added to the record by motion of appellants, in the light most favorable to appellants. Pretermitting the question of whether Gernaat's racial animus could be imputed to

appellees, we conclude that there is no evidence from which a factfinder could logically infer either that appellees engaged in racially discriminatory practices or that Peterson's murder was racially motivated. Therefore, summary judgment on this issue was properly granted.

6. Because we have affirmed the judgment in Case No. A93A0565, Arby's appeal in Case No. A93A0566 is rendered moot.

*Judgment in Case No. A93A0565 affirmed. Appeal in Case No. A93A0566 dismissed. McMurray, P. J., concurs. Beasley, P. J., concurs in judgment only as to Division 5.*

DECIDED JULY 12, 1993 —
RECONSIDERATION DENIED JULY 28, 1993 —

*Cofer, Beauchamp & Butler, Frank R. Siegel, Bryant K. Smith,* for Peterson.

*Irwin, Bladen, Baker & Russell, R. Chris Irwin, Carter & Ansley, Thomas E. Magill,* for Arby's and RTM Mid-America, Inc.