**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J, and BOGGS, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 15, 2016**

# In the Court of Appeals of Georgia

A15A2139. STURGESS v. OA LOGISTICS SERVICES, INC. et al.    DO-105

DOYLE, Chief Judge.

Maria Sturgess appeals from the grant of summary judgment to OA Logistics Services, Inc. ("OA"), and Staffchex, Inc., in her wrongful death claim against them based on the death of her son, Nickifor Zephyrine. Sturgess contends that the trial court erred by ruling that her claim was barred by the exclusive remedies provision of the Georgia Workers' Compensation Act ("WCA").[1] Because the undisputed facts show that Zephyrine's death did not arise out of his employment, we reverse the grant of summary judgment on that ground.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.

---

[1] OCGA § 34-9-11.

A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

So viewed, the record shows that OA contracted with Staffchex to provide temporary workers to work at a warehouse owned and operated by OA. On February 16, 2012, Christopher Lema applied for a position with Staffchex using Christopher Young-Evans as an alias. Certain portions of Lema's application form were incomplete, and his purported photo identification appeared different from his actual appearance. OA required Staffchex to perform criminal background checks on each worker before they were employed, but before Lema's check was returned, he began working at an OA warehouse. The check on the alias would eventually show no criminal history, despite the fact that Lema had a felony criminal record.

On February 24, 2012, still before the return of the criminal background check, Lema was employed at the OA warehouse along with Zephyrine, who drove a forklift. Zephyrine's forklift ran out of fuel, so he went to an office area to inquire about

---

[2] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

refueling. He encountered a female employee who told him he might find a supervisor if he waited outside the office. As Zephyrine waited outside the office with his back turned, Lema entered the office and attempted to kiss the female co-worker, who immediately pushed him off. In response, Lema smirked, "stood back[,] . . . and walked out." Lema then produced a hand gun and shot Zephyrine in the back of the head, re-entered the office, and sexually assaulted the female employee. During the ensuing struggle, Lema inexplicably passed out, and the female employee fled, warning the other employees in the warehouse. According to the female employee, Zephyrine, who was a family friend, had not been aware of the assault, had not attempted to intervene, and had not interacted with Lema before that occasion.

Based on Zephyrine's death, Sturgess sued OA, Staffchex, Lema, a John Doe who allegedly supplied Lema the gun, and another corporate entity. Among the allegations were claims that OA and Staffchex negligently conducted the hiring process, resulting in the hiring of a convicted felon who attacked his co-workers, killing Zephyrine.

Following discovery, Staffchex and OA moved for summary judgment, and the trial court granted it in favor of both parties on the ground that the exclusive remedy provisions of the WCA bar Sturgess's tort claims against them. Sturgess now appeals.

Sturgess contends that the trial court erred by concluding that Zephyrine's injury arose out of and in the course of his employment. We agree.

Under OCGA § 34-9-11 (a), the WCA is the exclusive remedy for injuries "by accident arising out of and in the course of employment."[3]

> A felonious assault by a third party upon an employee is treated as an accident covered by the Act, so long as the wilful act is not directed against the employee for reasons personal to the employee. In order to determine if the assault occurred for reasons personal to the employee, we consider whether the injuries of which the employee complains (1) arose out of and (2) in the course of [his] employment. If these two conditions are met, the employee's tort claims are barred by the exclusive remedy provisions of the [WCA]. Accordingly, whether the attack [in this case] occurred for reasons personal to [Zephyrine] depends upon whether [his death] arose out of and in the course of [his] employment . . . .[4]

It is beyond dispute that Zephyrine's death arose in the course of his employment because it occurred while he was on duty performing his job functions

---

[3] OCGA § 34-9-1 (4).

[4] (Citations and punctuation omitted.) *Burns Intl. Security Svcs. Corp. v. Johnson*, 284 Ga. App. 289, 290-291 (1) (643 SE2d 800) (2007).

at his employment location.[5] Accordingly, our analysis focuses on whether Zephyrine's death "arose out of" his employment.

> The words "arising out of" mean that there must be some causal connection between the conditions under which the employee worked and the injury which he received. The causative danger must be incidental to the character of the employment, and not independent of the relation of master and servant. The accident must be one resulting from a risk reasonably incident to the employment. And a risk is incident to the employment when it belongs to, or is connected with, what a workman has to do in fulfilling his contract of service. It arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, *a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment.*

---

[5] See id. at 292 (1) (b) ("An injury arises in the course of employment when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of [his] duties, and while []he is fulfilling those duties or engaged in doing something incidental thereto. This statutory requirement relates to the time, place and circumstances under which the injury takes place.") (punctuation omitted).

5

Contrarily, the definition excludes an injury which can not fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workmen would have been equally exposed apart from the employment.[6]

This analysis is highly fact-specific and particular to the circumstances of each case. For example, in *Helton v. Interstate Brands Corporation*,[7]

this Court addressed a scenario in which the plaintiff arrived for her 5:00 a.m. shift and parked in the employee parking lot of the defendant company. As plaintiff exited her car, she was assaulted by a person who was unknown to her, but who was later identified as another employee of defendant. Plaintiff was forcibly taken by the assailant in his car to an area away from the plant where she was again assaulted and then raped. This Court affirmed the finding that the injuries from the assault arose out of the plaintiff's employment because the early morning hour at which plaintiff was required to report to work and the location of the company parking lot in the vicinity of an area of known criminal activity provide the causal connection with her employment.[8]

---

[6] (Footnote and punctuation omitted; emphasis supplied.) *Dawson v. Wal-Mart Stores, Inc.*, 324 Ga. App. 604, 607 (2) (751 SE2d 426) (2013).

[7] 155 Ga. App. 607 (271 SE2d 739) (1980).

[8] (Footnotes and punctuation omitted.) *Dawson*, 324 Ga. App. at 607-608 (2).

In another similar case, *Kennedy v. Pineland State Bank*,[9] the Court held that a sexual assault of a female bank employee by a male bank director while the employee was helping him conduct business in the bank vault could not be fairly traced to her employment.[10] The Court's rationale was that the risk of such an attack was not in any way connected with the employee's fulfillment of her responsibilities of employment.[11] Thus, the question in these cases turns on whether there are facts showing a discernible causal connection between the injury and the employee's work or workplace.[12]

In the present case, as in *Kennedy*, the record is devoid of any connection between the attack and Zephyrine's work or workplace. Contrary to cases where a violent attack was connected with an employee's required presence in a high-crime

---

[9] 211 Ga. App. 375 (439 SE2d 106) (1993).

[10] See id. at 375-376.

[11] See id. at 376.

[12] See, e.g., *Dawson*, 324 Ga. App. at 607-609 (collecting cases).

area,[13] a dark parking lot at unusual hours,[14] or a high-risk area late at night,[15] Zephyrine's work did not require him to be in a location that heightened his risk of injury or criminal attack. Nor is there evidence that Zephyrine and Lema had any work-related dispute that escalated into violence.[16]

Staffchex argues that the killing nevertheless arose out of Zephyrine's employment under the positional risk doctrine, which holds that

> an accidental injury arises out of the employment when the employee proves that his work brought him within range of the danger by requiring his presence in the locale when the peril struck, even though any other person present would have also been injured irrespective of his employment.[17]

---

[13] See *Burns Intl. Security Svcs. Corp.*, 284 Ga. App. at 292-293 (1).

[14] See *Dawson*, 324 Ga. App. at 609 (2).

[15] See *Gen. Fire & Cas. Co. v. Bellflower*, 123 Ga. App. 864, 869-870 (4) (182 SE2d 678) (1971) (holding that a felonious assault of a bus driver who was eating out late on a required layover arose out of his employment).

[16] Compare *DeKalb Collision Center, Inc. v. Foster*, 254 Ga. App. 477, 481 (1) (562 SE2d 740) (2002) (holding that the trial court should have granted the defendants' motions for directed verdict and judgment n.o.v. because the plaintiffs' tort claims for the death of their father were the consequence of an on-the-job fight and were therefore barred by the exclusive remedy provision of the WCA).

[17] *Chaparral Boats, Inc. v. Heath*, 269 Ga. App. 339, 341 (1) (606 SE2d 567) (2004).

But this doctrine originally arose in Georgia to address "acts of God," such as a tornado at the workplace,[18] and later cases applying the doctrine have explained that "[t]he general rule still applies that the injury does not arise out of the employment where the causative danger is not 'peculiar to the work' in a way that *causally connects* the employment to the injury."[19] Thus, under the doctrine, an injury is not considered connected to the workplace if it is "a risk to which the employee would have been equally exposed apart from the employment, and therefore the injury was *not related to or caused by the peculiar nature of a condition of the employment*."[20]

Viewed in this way, in cases where employees are injured while traversing dark parking lots or high-crime areas because of their employment, it makes sense that resulting injuries are connected to their employment – even if caused by third-party criminal acts. Here, by contrast, there was no high-crime element to this particular workplace locale, nor was there any discernible risk of theft or robbery associated

---

[18] See *Nat. Fire Ins. Co. v. Edwards*, 152 Ga. App. 566 (1) (263 SE2d 455) (1979).

[19] (Emphasis supplied.) *Chaparral Boats, Inc.*, 269 Ga. App. at 343 (1)

[20] (Punctuation omitted; emphasis supplied.) Id.

9

with this workplace.[21] The risk of a random attack was no more heightened at Zephyrine's workplace than at any other place. Therefore, based on the undisputed facts before us, the positional risk doctrine does not demonstrate that Zephyrine's death arose out of his employment at the OA warehouse.[22]

For the reasons outlined above, the trial court erred by ruling that the exclusive remedy for Zephyrine's death was compensation under the WCA.

*Judgment reversed. Phipps, P. J., and Boggs, J., concur.*

---

[21] Compare *Peterson v. Rtm Mid-America*, 209 Ga. App. 691, 693-694 (2) (434 SE2d 521) (1993) (holding that, under Michigan law, the death of a restaurant worker who was killed by a co-worker as the co-worker robbed the restaurant arose out of the decedent's employment under the positional risk doctrine).

[22] The appellees urge that we affirm the trial court's ruling under the "right for any reason" rule. The trial court's order was brief and did not consider any issues other than the exclusive remedy of the WCA. Having addressed that ruling, and based on the record and briefing before us, we decline to exercise our discretion to explore other reasons to affirm the trial court's judgment. See generally *City of Gainesville v. Dodd*, 275 Ga. 834, 838 (573 SE2d 369) (2002) (explaining that the applicability of the right for any rule is discretionary based on the issues, facts, and trial and appellate briefing).