**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 7, 2024**

# In the Court of Appeals of Georgia

A24A0623. SIMMONS et al. v. SOLO CUP OPERATING CORPORATION.

DILLARD, Presiding Judge.

The trial court granted Solo Cup Operating Corporation's motion to dismiss this wrongful-death action,[1] holding that it was barred by the Georgia Workers' Compensation Act. For the following reasons, we reverse.[2]

The undisputed facts show that Solo manufactures single-use products for food and beverage packaging at a plant in Conyers—*e.g.*, the ubiquitous red Solo cup. On

---

[1] We review a trial court's grant of a motion to dismiss *de novo*. *See Dennis v. City of Atlanta*, 324 Ga. App. 659, 659 (751 SE2d 469) (2013); *accord Norman v. Xytex Corp.*, 310 Ga. 127, 130 (2) (848 SE2d 835) (2020).

[2] Oral argument was held on April 10, 2024, and is archived on the Court's website. *See* Court of Appeals of the State of Georgia, Oral Argument, Case No. A24A0623 (Apr. 10, 2024), *available at* https://vimeo.com/934571504.

December 13, 2019, the decedent—Taurus Andrews, who worked at the plant—discovered a small bag containing several identification cards in a men's restroom. Andrews turned the bag over his supervisor, who then took it to another supervisor. That supervisor returned the bag to Camron Golden, who also worked at the factory. Prior to that day, Andrews and Golden were not acquainted with one another.

Once the bag was returned to him, Golden discovered that $400 was missing. He asked who recovered the bag, and a supervisor told him it was Andrews. Golden then confronted Andrews, who denied taking the money. But Golden was unconvinced by this denial, and he told other employees he believed Andrews had stolen his money. Golden then retrieved a handgun and shot Andrews at the plant, tragically killing him.[3]

Deborah Simmons—Andrews's mother and legal heir—filed a wrongful-death action against Solo and other defendants, alleging that Solo negligently hired and retained Golden and negligently failed to keep its premises safe. Solo filed a motion

---

[3] Golden was later indicted for murder and other crimes, and he ultimately pleaded guilty to killing Andrews.

to dismiss,[4] arguing the trial court lacked subject-matter jurisdiction because the action was barred by the exclusivity provision of the Workers' Compensation Act ("WCA"). Following extensive briefing, a period of limited discovery, and a motion hearing, the trial court granted Solo's motion to dismiss. The court then directed the entry of final judgment as to Solo.[5] This appeal follows.

1. Simmons first contends the trial court erred in concluding that the WCA's exclusivity bar is a question of subject-matter jurisdiction. This claim is not properly before us.

As a general principle, the WCA is the exclusive remedy for a worker or next of kin who sustains an "injury" arising out of and in the course of employment.[6]

---

[4] *See* OCGA § 9-11-12 (b) (1).

[5] *See* OCGA § 9-11-54 (b).

[6] *See* OCGA §§ 34-9-11 (a) ("The rights and the remedies granted to an employee by this chapter shall exclude and be in place of all other rights and remedies of such employee, his or her personal representative, parents, dependents, or next of kin, and all other civil liabilities whatsoever at common law or otherwise, on account of such injury, loss of service, or death[.]"); 34-9-1 (4) (defining an injury or personal injury for purposes of the WCA as an "injury by accident arising out of and in the course of employment"); *Smith v. Camarena*, 352 Ga. App. 797, 798 (2) (835 SE2d 712) (2019) (explaining that plaintiffs may not pursue a tort action when a worker's death is compensable under the WCA).

Beginning with *Kellogg Co. v. Pinkston*,[7] this Court has held that the exclusivity bar is an issue of subject-matter jurisdiction.[8] Simmons asserts this Court's decisions in *Kellogg* and its progeny are wrongly decided, contrary to other decisions from this Court[9] and the Supreme Court of Georgia,[10] and should be disapproved or overruled.

In Solo's original motion to dismiss (filed in March 2022), Solo argued the trial court lacked subject-matter jurisdiction because Simmons's claims were barred by the WCA. Over the next 18 months, despite filing several different responses, Simmons never claimed the exclusivity bar was not an issue of subject-matter jurisdiction or that *Kellogg* and its progeny were wrongly decided. Rather, Simmons consistently

---

[7] 253 Ga. App. 190 (558 SE2d 423) (2001).

[8] *See id*. at 191-92 (1) (558 SE2d 423) (2001) (holding the trial court was under a duty to dismiss plaintiff's complaint for lack of subject-matter jurisdiction when WCA was plaintiff's exclusive remedy); *see also T & R S. Sanitation v. Lowe*, 365 Ga. App. 220, 221 (1) (878 SE2d 77) (2022) (considering for the first time on appeal employer's claim that the trial court lacked subject-matter jurisdiction because plaintiff's claims fell within the exclusive jurisdiction of the WCA); *Savannah Hosp. Servs., LLC v. Scriven*, 350 Ga. App. 195, 199, n.4 (828 SE2d 423) (2019) (citing *Kellogg*, *supra*, for the proposition that "the application of the exclusivity bar is akin to an issue of the trial court's subject[-]matter jurisdiction").

[9] *Utz v. Powell*, 160 Ga. App. 888 (288 SE2d 601) (1982).

[10] *Smith v. Ellis*, 291 Ga. 566 (731 SE2d 731) (2012); *Johnson v. Hensel Phelps Const. Co.*, 250 Ga. 83 (295 SE2d 841) (1982).

maintained the trial court had subject-matter jurisdiction because her claims fell outside of the WCA.[11]

Suffice it to say, this Court may refuse to review issues not raised in the trial court;[12] and for good reason—fairness to the trial court and parties "demands that legal issues be asserted in the trial court."[13] So, because this issue was not raised

---

[11] A party may raise at any time a challenge to the trial court's subject-matter jurisdiction, *see Abushmais v. Erby*, 282 Ga. 619, 622 (3) (652 SE2d 549) (2007) ("The court's lack of subject-matter jurisdiction cannot be waived and may be raised at any time either in the trial court, in a collateral attack on a judgment, or in an appeal." (citation and punctuation omitted)), but Simmons does not contend the trial court lacked subject-matter jurisdiction over this case.

[12] *See Pfeiffer v. Ga. Dep't of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) ("[A]bsent special circumstances, an appellate court need not consider arguments raised for the first time on appeal." (footnote omitted)); *Santana v. Ga. Power Co.*, 269 Ga. 127, 129 (6) (498 SE2d 521) (1998) (holding that because a certain argument was not raised and ruled on by the trial court, the Supreme Court of Georgia would not address it on appeal); *Ga. Dep't of Natural Res. v. Coweta Cnty.*, 261 Ga. 484, 485 (405 SE2d 470) (1991) ("Issues which have not been ruled on by the trial court may not be raised on appeal."); *Pneumo Abex, LLC v. Long*, 357 Ga. App. 17, 29 (2) (849 SE2d 746) (2020) ("As we have repeatedly explained, this is a Court for the correction of errors of law, and if the trial court has not ruled on an issue, we will not address it. Indeed, without a ruling by the trial court on a particular issue, there is nothing for this Court to review upon appeal." (punctuation and footnote omitted)).

[13] *Pfeiffer*, 275 Ga. at 829 (2).

below, we leave for another day the resolution of this interesting—but unpreserved—claim of error.[14]

2. In a related claim of error, Simmons contends the trial court erred in holding that she bore the burden of proving the WCA did not apply because the exclusivity bar is an affirmative defense. Aside from general allegations that Solo could not meet its burden of showing the WCA applied, Simmons similarly did not raise this issue in the trial court below, and we will not consider it for the first time on appeal.[15]

3. Turning to the merits of the trial court's ruling, Simmons contends the trial court erred in granting Solo's motion to dismiss because her tort claims are not barred under the WCA. We agree.

As an initial matter, this case comes to us in a somewhat unusual procedural posture. A motion to dismiss for lack of subject-matter jurisdiction under OCGA § 9-11-12 (b) (1) can "allege either a facial challenge, in which the court accepts as true the allegations on the face of the complaint or a factual challenge, which requires

---

[14] *See supra* note 12.

[15] *See supra* note 12.

consideration of evidence beyond the face of the complaint."[16] Such a motion "may be heard and determined before trial[.]"[17] And at such a hearing, factual issues "shall be determined by the trial court[,]" and they "will be reversed only where the evidence demands a contrary finding[.]"[18] When the trial judge conducts a hearing on a motion to dismiss . . . ," the court's findings are "tested by the any evidence rule."[19] But importantly, when a defendant asserts a lack of subject-matter jurisdiction in a motion to dismiss, the plaintiff "bears the burden of establishing that jurisdiction exists,"[20] and we review the grant of such a motion *de novo*.[21]

---

[16] *Douglas Cnty. v. Hamilton State Bank*, 340 Ga. App. 801, 801 (798 SE2d 509) (2017) (punctuation omitted); *see* OCGA § 9-11-12 (h) (3) ("Whenever it appears, by suggestion of the parties or otherwise, that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

[17] *Conrad v. Conrad*, 278 Ga. 107, 109 (597 SE2d 369) (2004) (punctuation omitted).

[18] *Id.* (punctuation omitted).

[19] *Id.* (punctuation omitted).

[20] *Stillwell v. Topa Ins. Co.*, 363 Ga. App. 126, 127 (871 SE2d 8) (2022); *accord Douglas Cnty.*, 340 Ga. App. at 801.

[21] *See supra* note 1 & accompanying text.

Turning to the WCA, as a general matter, this statute is the exclusive remedy for a worker or next of kin who sustains an "injury" arising out of and in the course of employment.[22] Further, whether an injury "arises out of and in the course of employment is generally a mixed question of law and fact,"[23] and these two prerequisites are "independent and distinct[.]"[24] And while the WCA is intended to have broad application,[25] there are exceptions to this sweeping coverage.[26] As relevant here, if the willful act of a third person is "directed against an employee for reasons

---

[22] *See supra* note 6 & accompanying text.

[23] *Kil v. Legend Bros.*, LLC, 350 Ga. App. 680, 681 (830 SE2d 245) (2019) (punctuation omitted); *accord Lee v. Sears*, 223 Ga. App. 897, 897 (479 SE2d 196) (1996).

[24] *Frett v. State Farm Emp. Workers' Comp.*, 309 Ga. 44, 46 (2) (844 SE2d 749) (2020) (punctuation omitted).

[25] *See* OCGA § 34-9-23 ("This chapter shall be liberally construed only for the purpose of bringing employers and employees within the provisions of this chapter and to provide protection for both. This chapter is intended to provide a complete and exclusive system and procedure for the resolution of disputes between employers and employees who are subject to this chapter concerning accidents and injuries arising out of and in the course of employment as defined by this chapter.").

[26] *See Hennly v. Richardson*, 264 Ga. 355, 356 (1) (444 SE2d 317) (1994).

personal to such employee, then there is not a covered injury[.]"[27] Further, in order to determine if the assault occurred for reasons personal to the employee, we consider whether "the injuries of which the employee complains (1) arose out of and (2) in the course of his employment."[28] If both of these conditions are met, any tort claims are barred by the exclusive-remedy provisions of the WCA; on the other hand, if either condition is not met, then the injury arose from "reasons personal" to the employee, and the plaintiff's tort claims are not barred.[29]

---

[27] *Potts v. UAP-Ga. Agric. Chem., Inc.*, 270 Ga. 14, 15 (506 SE2d 101) (1998); *see* OCGA § 34-9-1 (4) (excluding an "injury caused by the willful act of a third person directed against an employee for reasons personal to such employee" from the WCA definition of "injury").

[28] *Sturgess v. OA Logistics Servs., Inc.*, 336 Ga. App. 134, 135 (1) (784 SE2d 432) (2016) (punctuation omitted); *accord Potts*, 270 Ga. at 15.

[29] *Potts*, 270 Ga. at 15 ("Whether an injury is compensable or only a non-compensable occurrence due to reasons personal to the employee is dependent upon whether the injury arose out of and in the course of the employment. It has long been established that the statutory requirements that the injury arise 'out of' the employment and 'in the course of' the employment both must concur before the [WCA] can apply to an injury to an employee." (citation and punctuation omitted)); *Sturgess*, 336 Ga. App. at 135-136 (1) (explaining that if an employee's injuries (1) arose out of and (2) in the course of his employment, then the employee's tort claims are barred by the exclusive remedy provisions of the WCA).

In this case, Simmons concedes that Anderson's killing arose "in the course of" his employment. Even so, she contends this killing did not "arise out of" Anderson's employment, but rather, for "reasons personal" to him.[30] And as pertinent here, the "arising out of" prerequisite "deals with causation."[31] Specifically, the words "arising out of" mean "there must be some causal connection between the conditions under which the employee worked and the injury which he received[,]" and the "causative danger must be incidental to the character of the employment, and not independent of the relation of master and servant."[32] On the other hand, the definition "excludes an injury which can not fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workmen would have been equally exposed apart from the employment."[33] So, to be considered

---

[30] Simmons argues that application of the "reasons personal" exception is independent of whether an injury arises out of employment. But as noted above, the two tests are related. *See supra* notes 28-29 & accompanying text.

[31] *Frett*, 309 Ga. at 49 (2) (b).

[32] *Id.* at 50 (2) (b) ("The accident must be one resulting from a risk reasonably incident to the employment. And a risk is incident to the employment when it belongs to, or is connected with, what a workman has to do in fulfilling his contract of service." (punctuation omitted)); *accord Sturgess*, 336 Ga. App. at 136 (1).

[33] *Sturgess*, 336 Ga. App. at 136 (1) (punctuation omitted).

an injury arising out of employment, it must "either be caused by activity the employee engaged in as part of his or her job, or the injury must result from some special danger of the employment."[34] Indeed, in cases where an employee

> is injured in a physical altercation with another person occurring on the job but stemming from personal animosity, his injuries will nevertheless be considered compensable under the [WCA] if it is shown that the animosity arose from reasons related to the employee's performance of his work-related duties. Conversely, if the animosity giving rise to the assault stemmed from reasons not related to the injured employee's performance of his work, then his injuries will not be considered compensable under the [WCA].[35]

As a result, while we review the trial court's factual findings for any evidence,[36] it remains the "responsibility of this Court to review the legal framework within which

---

[34] *Cartersville City Sch. v. Johnson*, 345 Ga. App. 290, 297 (812 SE2d 605) (2018) (punctuation omitted).

[35] *Western Waterproofing Co., Inc. v. Rogers*, 204 Ga. App. 779, 780 (1) (420 SE2d 606) (1992) (emphasis omitted); *accord Heard v. Mitchell's Formal Wear, Inc.*, 249 Ga. App. 492, 493 (1) (549 SE2d 149) (2001).

[36] *See supra* note 19 & accompanying text.

the fact-finder operated, and thus to define what 'arising out of' employment means as a matter of law."[37]

Here, the trial court found Solo had human-resource policies and procedures—discussed during new-hire orientation—regarding the company's values of honesty, integrity, and cleanliness, which required Andrews to turn over Golden's lost or mislaid bag. Employees were also instructed to promptly report any suspected illegal or unethical behavior. Additionally, the court pointed to evidence that Andrews mentioned to another employee that he looked inside of the bag and "the thought was" Golden was involved in some kind of fraud. And based on this evidence, the trial court concluded Andrews was required by Solo's policies to turn over Golden's lost or mislaid bag.

The trial court also noted that, on the day of the shooting, Golden texted the following messages: "I found out who bought the bag back"; "[Solo] just ain't doin s***[.] I talk to the [person.] I done rob & stole so much [I know] when a [person]

---

[37] *Cartersville City Sch.*, 345 Ga. App. at 296; *see Coleman v. Columns Properties, Inc.*, 266 Ga. 310, 311 (467 SE2d 328) (1996) (explaining that whether injury arises out of and in the course of employment is "a mixed question of fact and law").

Guilty and he Guilty . . ."[38] And to a different individual, Golden texted: "I talked 2 the [person] who brought the bag back 2 the supervisor & I instantly knew his b*tch a** took it"; and later, "I can't live here [no more] a [person] stole my money . . . & I shot his . . . a**. . . ."

So, based on the foregoing, the trial court reasoned that prior to the date in question, there was no animosity between Golden and Andrews, but—upon discovering that his money was missing—Golden became angry with Andrews because he was the person who brought the bag to a supervisor. Continuing, the trial court explained that "[w]hile Golden's animosity was personal, between himself and Andrews, the animosity arose because of what Andrews was required to do as an employee of [Solo]—turn in the bag to a supervisor." In the trial court's view, Golden's anger toward Andrews arose from the performance of his job duties—*i.e.*, turning in Golden's mislaid bag. We disagree.

---

[38] Golden used a racial slur throughout his messages, which the trial court replaced with "person." We will do the same here. We have also used asterisks in recounting Golden's profanity.

Returning a bag to its rightful owner, whether in compliance with one's work rules or merely as a proverbial Good Samaritan,[39] does not often incur wrath. And here, there is no evidence Golden was angry because Andrews turned in the bag. Notably, although two other employees—both supervisors—were also involved in the return of Golden's bag, there is no evidence Golden targeted them. Rather, the evidence—as found by the trial court—shows that Golden was angry at Andrews because he believed Andrews stole money from him. So, because any alleged theft was entirely unrelated to Andrews's performance of his work, we find—as a matter of law—that the WCA does not apply here.[40]

---

[39] *See generally* THE HOLY BIBLE, Luke 10:29-37.

[40] *See Lindsey v. Winn Dixie Stores, Inc.,* 186 Ga. App. 867, 868 (1) (368 SE2d 813) (1988) (holding that employer was not entitled to summary judgment when evidence showed that employee's altercation with coworker was the result of name calling and not related to employee's job duties); *Walsh Const. Co. v. Hamilton*, 185 Ga. App. 105, 105-06 (363 SE2d 301) (1987) (holding that WCA did not apply when worker was attacked by coworker who objected to worker begging for food); *Hartford Accident & Indem. Co. v. Zachery*, 69 Ga. App. 250, 251 (3) (25 SE2d 135) (1943) (holding that WCA did not apply when claimant was attacked by a coworker because coworker was "provoked by the repeated accusations of the claimant that he was a talebearer, and not because the claimant was late for work or because of anything being done by him incidental to his employment"). *Cf. Swanson v. Lockheed Aircraft Corp.*, 181 Ga. App. 876, 879-81 (1) (b), (c) (354 SE2d 204) (1987) (holding that assault arose out of instructor's employment when it resulted from earlier confrontation over student's test results).

Even so, Solo contends the positional-risk doctrine applies in this case. This doctrine holds that "an accidental injury arises out of the employment when the employee proves that his work brought him within range of the danger by requiring his presence in the locale when the peril struck, even though any other person present would have also been injured irrespective of his employment."[41] Thus, although being assaulted is "not an obvious part of most jobs, the [WCA] compensates for injuries in cases where an employee is assaulted or killed if there is a nonpersonal, causal connection to the work."[42] We are likewise unpersuaded by this contention.

As previously noted, Andrews's death resulted from a personal matter: Golden's belief that Andrews stole money from him. This case, then, stands in stark contrast from the positional-risk decisions relied upon by Solo, in which the injured or killed worker was essentially an innocent bystander and not attacked for reasons personal to the worker.[43] Indeed, we have held that

---

[41] *Sturgess*, 336 Ga. App. at 137 (1) (punctuation and emphasis omitted); *accord Chaparral Boats, Inc. v. Heath*, 269 Ga. App. 339, 341 (1) (606 SE2d 567) (2004).

[42] *DeKalb Collision Ctr., Inc. v. Foster*, 254 Ga. App. 477, 481 (1) (562 SE2d 740) (2002).

[43] *See, e.g.*, *Sturgess*, 336 Ga. App. at 135-139 (1) (holding that positional-risk doctrine applied when worker was killed by employee who sought out and sexually

15

[w]here the injury would have occurred regardless of where the employee was required to be located, and results from a risk to which the employee would have been equally exposed apart from any condition of the employment, there is no basis for finding a causal connection between the employment and the injury, and no basis for compensation under the positional[-]risk doctrine.[44]

So, given the particular facts of this case (as found by the trial court), we conclude that Andrews was killed for reasons personal to him, such that his injury was

assaulted another employee because employment required worker's presence in the locale where the peril struck and, unlike in this case, exposed worker to a "common risk"); *DeKalb Collision Ctr.*, 254 Ga. App. at 481 (1) (holding positional-risk doctrine applied when worker was killed while breaking up a fight between employer and contractor and noting that, "[i]n this case, there is no evidence that [the worker's] death was causally connected to any personal matters"); *Empl'rs Ins. Co. of Alabama v. Wright*, 108 Ga. App. 380, 381 (133 SE2d 39) (1963) (holding that positional-risk doctrine applied where worker's employment increased her risk of sexual assault and there was "no question of prior personal motivation or ill will between her and the assailant").

[44] *Sturgess*, 336 Ga. App. at 137-38 (punctuation omitted); *accord Chaparral Boats*, 269 Ga. App. at 343 (1).

not covered by the WCA.[45] Accordingly, the trial court erred in granting Solo's motion to dismiss.

*Judgment reversed. Brown and Padgett, JJ., concur.*

---

[45] Simmons also points to evidence that—leading up to the shooting—Golden also texted "Money Only [thing] I trip about," and he asked another employee for information about Andrews, including whether the other employee would be willing to take Andrews home in exchange for a monetary payment. But we need not determine if this evidence demands a contrary finding because, even under the facts as found by the trial court, the WCA does not apply as a matter of law. *See Conrad*, 278 Ga. at 109 (explaining that "[f]actual determinations of the trier of fact will be reversed only where the evidence demands a contrary finding" (punctuation omitted)).